# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| FIRSTBANK, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 4:21-cv-449 |
| TZK INVESTMENTS, LLC, | § | Judge Mazzant |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant TZK Investments, LLC's Motion for Summary Judgment (Dkt. #23) and Plaintiff FirstBank's Summary Judgment Motion (Dkt. #24). Having considered the motions and the relevant pleadings, the Court finds Plaintiff's Summary Judgment Motion should be **GRANTED in part and DENIED in part**, and Defendant's Motion for Summary Judgment should be **DENIED**.

## BACKGROUND

On May 12, 2011, Defendant TZK Investments, LLC ("TZK") entered into a brokerage agreement (the "Brokerage Agreement") with an entity named Franklin Synergy Bank ("Franklin") (Dkt. #1, Exhibit 1). Franklin eventually merged into Plaintiff FirstBank ("FirstBank").

The Brokerage Agreement states that Franklin sought to sell mortgage loans on a bulk and/or flow basis, and that Franklin desired to obtain TZK's brokerage services, specifically in introducing Franklin to potential buyers of mortgage loans. The Brokerage Agreement also states:

> If seller, or any of its affiliates, sells any of the mortgage loans to any broker contact whereby broker introduced such broker contact to seller, then, subject to section 1(b), broker shall be entitled toa fixed fee equal to 25 basis points (0.25%) of the outstanding principal balance of the mortgage loans as of the closing date of any and all such sales to broker contact (the "commission"). "Broker contact" shall mean any individual or a legal entity who buys mortgage loans from seller whereby broker introduced buyer to seller.

(Dkt. #1, Exhibit 1 § 1(a)). The Brokerage Agreement does not state a termination date. Nor does the Brokerage Agreement specify a procedure for either party to terminate the agreement.

After entering into the Brokerage Agreement, TZK connected Franklin with Capitol Federal, a potential buyer of Franklin's loans. Franklin began selling loans to Capitol Federal in late 2011, and Franklin paid commissions to TZK for each loan sold.

Franklin merged into FirstBank on August 15, 2020 (Dkt. #17 ¶ 10). FirstBank continued selling loans to Capitol Federal and paying TZK commissions after the merger. As of December 31, 2020, TZK had received a total of $613,174.53 under the terms of the Brokerage Agreement (Dkt. #24 ¶ 30).

On March 16, 2021, FirstBank, through its general counsel, sent a letter to TZK providing FirstBank's "notice of non-renew and terminate the [Brokerage Agreement] in its entirety, without penalty" (the "Letter") (Dkt. #24, Exhibit A-6). TZK disputed FirstBank's right to terminate the Brokerage Agreement (Dkt. #24, Exhibit A-7). "Out of an abundance of caution," on June 14, 2021, FirstBank tendered TZK a check in the amount of $93,918, which FirstBank calculated to be the commissions owed to TZK for all loans sold by FirstBank to Franklin Synergy through March 16, 2021 (Dkt. #17 ¶ 17). FirstBank now asserts its calculation was incorrect because any commissions owed from January 1, 2021, to March 16, 2021, would total $43,939.78. In total, TZK has received $707,092.53 in commissions for loans sold to Capitol Federal.

FirstBank filed suit on June 14, 2021, seeking declaratory relief (Dkt. #1). Specifically, FirstBank requests a declaration that it terminated the Brokerage Agreement on March 16, 2021, a reasonable duration for the Brokerage Agreement has passed, and FirstBank owes no obligation to pay TZK commissions (Dkt. #1 ¶ 29). In its answer, TZK denied FirstBank's allegations and asserted counterclaims for declaratory relief and breach of contract (Dkt. #6). TZK seeks a declaration from the Court that: (1) the Brokerage Agreement was not terminable at will; (2) the Brokerage Agreement was not validly terminated; (3) the Brokerage Agreement cannot be terminated so long as FirstBank sells loans to Capitol Federal; and (4) even if the Brokerage Agreement was validly terminated, FirstBank is still obligated to pay TZK commissions for loans sold to Capitol Federal (Dkt. #6 ¶ 27).

On September 14, 2021, FirstBank made formal demand on TZK to return the $43,939.78 in alleged overpayment of commissions within thirty (30) days (Dkt. #24, Exhibit A-10). TZK did not pay FirstBank any amount of money. Accordingly, on October 22, 2021, FirstBank amended its complaint, adding claims for unjust enrichment, money had and received, and conversion based on its alleged overpayment of commissions (Dkt. #17).

TZK moved for summary judgment on January 7, 2022 (Dkt. #23). FirstBank responded on February 11, 2022 (Dkt. #27). TZK replied on February 25, 2022 (Dkt. #34). FirstBank also moved for summary judgment on January 7, 2022 (Dkt. #24). TZK responded on February 11, 2022 (Dkt. #29). FirstBank replied on February 25, 2022 (Dkt. #35).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits

"[show] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor . . . unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp.*, 98 F. App'x 335, 338 (5th Cir. 2004). Rather, the Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United*

*States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all of the evidence but must refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

FirstBank and TZK have filed competing summary judgment motions. TZK argues it is entitled to judgment on its requests for declaratory judgment and its breach of contract claim (Dkt. #23). FirstBank asserts it too is entitled to judgment on its requests for declaratory judgment (Dkt. #24). FirstBank also argues it is entitled to judgment for $43,939.78 under its claim for either unjust enrichment or money had and received.[1] Finally, FirstBank contends TZK's breach of contract counterclaim fails as a matter of law.

### I. Declaratory Relief

FirstBank requests a declaration it terminated the Brokerage Agreement on March 16, 2021, a reasonable duration for the Brokerage Agreement has passed, and FirstBank owes no further obligation to pay TZK commissions (Dkt. #1 ¶ 29). TZK seeks a declaration from the Court that: (1) the Brokerage Agreement was not terminable at will; (2) the Brokerage Agreement was not validly terminated; (3) the Brokerage Agreement cannot be terminated so long as FirstBank sells loans to Capitol Federal; and (4) even if the Brokerage Agreement was validly terminated, FirstBank is still obligated to pay commissions for loans sold to Capitol Federal (Dkt. #6 ¶ 27). Because each side's request for declaratory judgment principally revolves around this Court's determination of whether the Brokerage Agreement was terminable

[1] While the Amended Complaint contains a claim for conversion (Dkt. #17), and FirstBank asserts in its motion that it is entitled to judgment on its conversion claim (Dkt. #24), FirstBank "abandons" the claim for conversion in its Reply (Dkt. #35). Thus, the Court need not consider the parties' arguments regarding conversion.

at will, the Court will begin its analysis there.[2]

**A. Whether the Brokerage Agreement was Terminable at Will**

"Under Texas law, when a contract 'contemplates continuing performance (or successive performances) and . . . [is] 'indefinite in duration,' it may be terminated at the will of either party. Moreover, 'this circuit . . . does not favor perpetual contracts' and 'presumes that [any such] contract is terminable at will.'" *Trient Partners I, Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir. 1996) (citations omitted); *see also Clear Lake City Water Auth. v. Clear Lake Utils. Co.*, 549 S.W.2d 385, 390 (Tex. 1977) ("[C]ontracts which contemplate continuing performance (or successive performances) and which are indefinite in duration can be terminated at the will of either party."). Conversely, "words which fix an ascertainable fact or event, by which the terms of a contract's duration can be determined, make the contract definite and certain in that particular." *City of Big Spring v. Bd. of Control*, 404 S.W.2d 810, 815 (Tex. 1966).

There are many instances in which a contract remains terminable at will because it is of indefinite duration. Where a contract fails to set out a duration that contract qualifies as "indefinite in duration." *City of Corpus Christi v. Taylor*, 126 S.W.3d 712, 722 (Tex. App.—Corpus Christi 2004, pet. withdrawn). If a contract imposes a continuing commitment or duty on one party to the contract, it is of indefinite duration. *Id.* In *Trient*, the Fifth Circuit held the contract at issue was terminable at will because its breach and default provisions were "not the kind of determinable events that transform a contract of indefinite duration into one of definite duration" because they merely stated, "foundational principles of contract law." 83 F.3d at 709. Thus, for example, if a contract permits termination in the event of death or incapacity, such term

[2] The Court, sitting in diversity, applies Texas law in the interpretation of contracts. *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 150 F.3d 526, 529 (5th Cir. 1998).

would not provide a definite duration for the agreement. *Id.* Finally, a contract may couch certain remedial clauses in terms of duration or termination, but that will not change the quality of the contract from indefinite to definite in duration. *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849 (5th Cir. 2004) (holding the following clause more closely resembled a remedy rather than duration term: "If FOC fails to make such payment as disclosed in Table One, FOC's license upon [Flurogas] providing written notice to FOC, shall hereafter be non-exclusive.").

Having reviewed the Brokerage Agreement, the Court cannot find any terms which evidence the term or duration of the contract (Dkt. #23, Exhibit A-1). The Brokerage Agreement does not state an end date, contain durational language, or provide a method whereby the parties could terminate the contract. Moreover, "this circuit presumes that a contract is terminable at will and does not favor perpetual contracts." *Delta Servs. & Equip., Inc. v. Ryko Mfg. Co.*, 908 F.2d 7, 9 (5th Cir. 1990). Because the Brokerage Agreement does not contain any language regarding its duration and does not specify the parties' intent, the Brokerage Agreement is indefinite in duration. Accordingly, the Brokerage Agreement was terminable at will and TZK's first request for declaratory relief fails as a matter of law.

That said, FirstBank also requests the Court declare that a reasonable duration for the Brokerage Agreement has passed. "[I]n certain circumstances, a reasonable time should be read into an otherwise terminable-at-will contract." *Fluorine*, 380 F.3d at 857 (citing *Clear Lake*, 549 S.W.2d at 391). To imply a term into an agreement, it must appear that it is necessary to do so in order to effectuate the purposes of the contract as a whole as gathered from the written instrument. *See HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998); *Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 268 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). Additionally, "*Clear Lake* and *Trient* both indicate that a contract's contemplation of a party's substantial expenditure

is a prerequisite for reading in a reasonable duration contract term." *Fluorine*, 380 F.3d at 858. Neither FirstBank nor TZK have made arguments regarding their substantial expenditure, nor can the Court find language in the Brokerage Agreement which evidences contemplation of such expenditure. The Court cannot find a reason why implying a term into the Brokerage Agreement is necessary to effectuate the purposes of the contract as a whole. Accordingly, the Court declines to imply a reasonable duration into the Brokerage Agreement and decide whether such duration has passed.

Having determined the Brokerage Agreement was terminable at will, the Court now turns to the issue of termination.

**B. Termination**

FirstBank seeks a declaration from the Court that it validly terminated the Brokerage Agreement on March 16, 2021 (Dkt. #17 ¶ 28). TZK seeks a declaration from the Court that the Brokerage Agreement was not terminated and cannot be terminated so long as FirstBank sells loans to Capitol Federal (Dkt. #6 ¶ 27).

The Letter to FirstBank on March 16, 2021, providing FirstBank's "notice of non-renew and terminate the [Brokerage Agreement] in its entirety, without penalty" terminated the Brokerage Agreement. Neither party disputes the Letter clearly expresses FirstBank's intent to terminate the Brokerage Agreement. Further, "[i]f a contract is considered terminable at will, 'the act of terminating the contract is not itself a breach of contract by [the promisor] because it was merely exercising its right to terminate the contract with or without cause.'" *1320/1390 Don Haskins, Ltd. v. Xerox Commer. Sols., LLC*, 584 S.W.3d 53, 67 (Tex. App.—El Paso 2018, pet. denied) (citations omitted). FirstBank merely exercised its right, thereby terminating the Brokerage Agreement on March 16, 2021. However, TZK argues even if the Brokerage

Agreement was terminable at will, the Letter did not terminate FirstBank's obligation to pay commissions.

**C. Obligation for Commissions**

FirstBank seeks a declaration from the Court that it owes no further obligations under the Brokerage Agreement (Dkt. #17 ¶ 29). TZK seeks a declaration from the Court that, even if the Brokerage Agreement was terminated, FirstBank's obligation to pay commissions continues because it was the procuring cause of the sale of the mortgage loans to Capitol Federal (Dkt. #6 ¶ 27). FirstBank counters that the procuring cause rule does not apply.

A broker is the "procuring cause" and thus entitled to a commission when the broker is instrumental in bringing together parties who consummate a transaction on satisfactory terms. *Keener v. Cleveland*, 250 S.W. 151, 152 (Comm. App. 1923, jdgmt. adopted)]. "'Procuring cause' is defined as 'the cause originating a series of events, which, without [a] break in their continuity, result in the accomplishment of the prime object.'" *Truman Arnold Cos. v. Hammond & Consultants Enters., Inc.*, No. 12-09-00099-CV, 2010 WL 2982912, at *8 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op.) (quoting BLACK'S LAW DICTIONARY 1208). "Thus, 'a broker will be regarded as the "procuring cause" of a sale, so as to be entitled to commission, if his or her efforts are the foundation on which the negotiations resulting in a sale are begun.'" *Id.* (quoting BLACK'S LAW DICTIONARY 1208); *see also Goodwin v. Gunter*, 109 Tex. 56, 60 (1916), *set aside on rehearing on other grounds*, 109 Tex. 56, 195 S.W. 848 (1917) (holding a broker is the procuring cause of the sale only if he produces, through his efforts, "a purchaser . . . ready, able and willing to buy the property upon the contract terms . . . .").

First, it should be noted that the "procuring cause" standard or rule most often arises in the context of real estate brokerage. *Baylor Miraca Genetics Labs., LLC v. Perthuis*, 639 S.W.3d

108, 115 (Tex. App.—[1st Dist.] 2020, pet. granted). While courts have applied the rule in other contexts besides real estate brokerage agreement, *see Francis v. Foster*, 260 S.W. 1023, 1023–24 (Tex. 1924); *Keener*, 250 S.W. at 151–52; *Metal Structures Corp. v. Bigham*, 347 S.W.2d 270, 273–74 (Tex. App.—Dallas 1961, writ ref'd n.r.e.), none of those contexts are analogous to the facts at bar.

For example, in *Keener*, the Texas Supreme Court held that a broker was entitled to a commission on the sale of an oil and gas lease when he procured a buyer that met the seller's terms, even though the broker did not negotiate the final sale himself. 250 S.W. at 151–52. This case does not involve an oil and gas lease, thus *Keener* is not persuasive. *See Frost Nat'l Bank v. L& F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (citing *Davidson, Inc. v. Webster*, 128 S.W.3d 233, 229 (Tex. 2003) ("We construe contracts 'from utilitarian standpoint bearing in mind particular business activity sought to be served[.]'"))). In *Metal Structures*, a salesman negotiated and sold steel buildings for his employer. 347 S.W.2d at 271. When the salesman's employer terminated him, the employer required the salesman to "make a list of the jobs he had worked on" and told him "he would be paid commissions on any of these jobs" if the jobs culminated in a contract for the sale of the building. *Id.* at 273. Unlike the oral assertions in *Metal Structures*, the parties here entered a written agreement setting out the terms of the compensation structure. Accordingly, the cases in which the procuring cause standard has been applied outside the context of real estate brokerage agreements are not persuasive here.

Second, the Brokerage Agreement does not contemplate the procuring cause standard. Under the Brokerage Agreement, TZK was entitled to commissions from sales made with a "Broker Contact," which was defined as "any individual or legal entity who buys Mortgage Loans from Seller whereby broker introduced Buyer to Seller" (Dkt. #23, Exhibit 2). Mere

introduction does not approximate to the procuring cause standard, which requires the broker be "instrumental" in bringing about the sale. *Keener*, 250 S.W. at 152. Nor does the Brokerage Agreement contemplate a continuing commission obligation at the termination of the contract. Courts are not authorized to rewrite agreements to insert provisions parties could have included or to imply terms for which they have not bargained. *Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996); *see also HECI*, 982 S.W.2d at 888 (holding that courts cannot make, or remake, contracts for parties). The Court will not do so here.

Finally, TZK argues "Texas courts have consistently held that a broker is entitled to be paid [] commissions . . . even if the seller attempts to terminate the contract before the sale occurs" (Dkt. #23 at p. 10). TZK relies on the decisions in *Fuess v. Mueller*, 630 S.W.2d 715 (Tex. App.—Houston [1st Dist.] 1982, no writ) and *Ramesh v. Johnson*, 681 S.W.2d 256 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). However, both cases dealt with real estate contracts. Moreover, both cases involved a single real estate contract and a single lost commission. Whereas here, there was not one just sale, nor just one commission. TZK benefited from sales with Broker Contacts over the course of almost ten years. None of these cases can be said to stand for the proposition that there is a continued obligation to pay commissions after the almost ten-year long brokerage services contract was effectively terminated.

Therefore, when FirstBank terminated the Brokerage Agreement, it had no further obligation to pay TZK commissions for sales to Capitol Federal.

## II. Breach of Contract Counterclaim

TZK argues it is entitled to summary judgment on its breach of contract counterclaim (Dkt. #23). FirstBank argues it is entitled to summary judgment on this claim because the

Brokerage Agreement was terminable at will (Dkt. #24).

To prevail on a breach of contract claim, TZK must demonstrate: (1) a valid contract existed; (2) TZK performed or tendered performance as contractually required; (3) FirstBank breached the contract by failing to perform or tender performance as contractually required; and (4) TZK sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Neither party disputes a valid contract existed or that TZK performed under the Brokerage Agreement. Further, mere termination of Brokerage Agreement, because it was terminable at will, cannot constitute breach. *1320/1390 Don Haskins*, 584 S.W.3d at 67. However, TZK argues FirstBank breached the Brokerage Agreement when it sold mortgage loans to Capitol Federal after termination of the Brokerage Agreement and failed to pay TZK commissions (Dkt. #23 at p. 16). Nevertheless, the Court already discussed that when FirstBank terminated the Brokerage Agreement, its obligation to pay TZK any further commissions ceased on March 16, 2021. Thus, FirstBank did not breach the Brokerage Agreement and TZK's counterclaim necessarily fails.

**III. Unjust Enrichment, Money had and Received, Conversion**

Finally, FirstBank argues it is entitled to recover $43,939.78 in commissions mistakenly paid to TZK under either its claim for unjust enrichment or money had and received (Dkt. #24). FirstBank contends the mistake arose from a calculation based on an incorrect figure for the outstanding principal balance—$37,567,356—whereas the total outstanding principal balance of loans sold to Capitol Federal from January 1, 2021, through March 16, 2021, was only $19,992,646.

TZK counters that FirstBank's claims fail as a matter of law because there was no over-payment, and in fact, it is entitled to an additional $51,269.14 in commissions. TZK also argues

equitable claims like unjust enrichment are not available where an express contract exists. Next, TZK posits its affirmative defense of unclean hands is too fact-intensive to be disposed of at this stage. Finally, TZK argues Texas courts no longer recognize a cause of action for unjust enrichment.

The Court starts by noting that a claim for unjust enrichment is not precluded in this case merely because the Brokerage Agreement governed the parties' relationship. While the general rule is that where a valid, express contract which covers the subject matter of the parties' dispute exists, "there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000) (citing *TransAmerican Natural Gas Corp. v. Finkelstein*, 933 S.W.2d 591, 600 (Tex. App.—San Antonio 1996, writ denied)). However, the general rule is subject to exceptions. *Id.* Indeed, overpayments under a contract can be recovered under a theory of restitution or unjust enrichment. *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469 (Tex. 1998). Thus, TZK's argument on this point does not stand.

Second, the Court disagrees with TZK's characterization of Texas caselaw regarding whether unjust enrichment is recognized as a cause of action. While some appellate courts have suggested unjust enrichment is not an independent cause of action, "the Texas Supreme Court has suggested otherwise." *SVT, LLC v. Seaside Vill. Townhome Ass'n*, No. 14-19-586-CV, 2021 WL 2800463, at *5 n.5 (Tex. App.—Houston [14th Dist.] July 6, 2021, no pet.) (citing *Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870–71 (Tex. 2007) (per curiam)). For example, the Texas Supreme Court has discussed and affirmed the limitations period for unjust enrichment claims. *See Elledge*, 240 S.W.3d at 870–71 (reaffirming that limitations period for unjust-enrichment claims is two years); *see also Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 737 (Tex. 2001) (discussing limitations period for unjust-enrichment claims); *HECI*, 982 S.W.2d

at 885, 891 (referring to unjust-enrichment cause of action and two-year limitations period). Further, the Texas Supreme Court has explicitly referred to unjust enrichment as a cause of action. *Fortune*, 52 S.W.3d at 685. Absent a Texas Supreme Court decision stating otherwise, the Court will operate off the assumption that unjust enrichment is a cause of action in Texas. That said, the Court finds there is a genuine issue of material fact on FirstBank's remaining claims, along with TZK's affirmative defense of unclean hands.

"Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *16 (E.D. Tex. Sept. 14, 2017) (citing *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied)). Thus, "[a] party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *MeTX, LLC v. Wal-Mart Stores Tex., LLC*, 62 F. Supp. 3d 569, 586 (E.D. Tex. 2014) (citing *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Both sides have prepared spreadsheets for the Court that reflect sales of mortgage loans to Capitol Federal, and each financial spread supports each side's respective position (Dkt. #24, Exhibit A-11; Dkt. #29, Exhibit 7). Because of the conflicting evidence on whether there was an overpayment, and thus whether TZK obtained a wrongful benefit, the Court finds there is a genuine issue of material fact on FirstBank's claim for unjust enrichment.

Similarly, to succeed on a claim for money had and received, "a plaintiff must show that a defendant holds money which in equity and good conscience belongs to him." *Edwards v. Mid-Continent Office Distribs., L.P.*, 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008) (citing *Best Buy Co. v. Barrera*, 248 S.W.3d 160, 162–63 (Tex. 2007)). Again, because there is

conflicting evidence regarding whether TZK holds money from sales commissions it has not in fact earned, there is a genuine issue of material fact on FirstBank's claim for money had and received. Accordingly, summary judgment is not available.

Finally, the equitable defense of unclean hands is based on "the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008) (internal quotation omitted). "[T]he unclean hands defense is inapplicable altogether where the plaintiff's sins do not affect or prejudice the defendant." *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 842 (5th Cir. 2004) (citing *Rodgers v. Tracy*, 242 S.W.2d 900, 905–06 (Tex. App.—Amarillo 1951, writ ref'd n.r.e.)). The Court agrees with TZK that the question of any wrongful conduct and what effect that may have had is a highly factual inquiry. Thus, TZK's affirmative defense of unclean hands is a question better determined by the jury. *Abraham v. Alpha Chi Omega*, 796 F. Supp. 2d 837, 847 (N.D. Tex. 2011) (citations omitted) ("Whether [Plaintiff] has unclean hands is a question of fact; should a genuine issue of material fact exist as to [Plaintiff]'s intent to derive benefit from the [Defendants'] goodwill, the matter should be resolved by a jury."). Therefore, FirstBank's remaining claims for unjust enrichment and money had and received survive TZK's motion.

## CONCLUSION

It is therefore **ORDERED** Plaintiff FirstBank's Summary Judgment Motion (Dkt. #24) is hereby **GRANTED in part and DENIED in part**. Defendant TZK Investments, LLC's counterclaim for breach of contract is hereby **DISMISSED**.

It is further **ORDERED** Defendant TZK Investments, LLC's Motion for Summary Judgment (Dkt. #23) is hereby **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 27th day of May, 2022.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE